UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
PRODIGY FINANCE LIMITED,

                           Petitioner,

       -against-

DISSE WAYOUROU ZADI-PAUYO,

                           Respondent.
----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
19 CV 6480 (DLI) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

        On November 15, 2019, petitioner Prodigy Finance Limited ("Prodigy") filed this summary proceeding (the "Confirmation Proceeding"), pursuant to the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), seeking to confirm and enforce a final arbitration award entered on February 8, 2019, by an arbitrator appointed by the London Court of International Arbitration ("LCIA") in favor of MBA Community Loans PLC ("MCL"). MCL designated Prodigy under a duly executed Power of Attorney, dated April 6, 2018, authorizing Prodigy to commence this Petition.

        Despite proper service of the Summons, Civil Cover Sheet and Petition, the respondent, Disse Wayourou Zadi-Pauyo ("respondent" or "Zadi-Pauyo") failed to appear and on June 16, 2020, the Clerk of Court entered a default against respondent. On September 1, 2020, petitioner filed a motion for default judgment, which was referred to the undersigned by the Honorable Dora L. Irizarry.

        For the reasons set forth below, the Court respectfully recommends that a default judgment enter in favor of petitioner in the amount of $52,519.65.

1

FACTUAL AND PROCEDURAL BACKGROUND

According to the Petition, which was filed on November 15, 2019, MBA Community Loans Plc ("MCL") is alleged to be a public limited company and a special purpose entity incorporated and existing under the laws of Ireland and headquartered at 2 Grand Canal Square, Grand Canal, Harbour Dublin 2, Ireland.  (Pet'n[1] ¶ 4; du Plessis' Decl.[2] ¶ 6).  MCL invests in student loan assets, which are acquired through funding supplied by investors.  (Pet'n ¶ 9; du Plessis' Decl. ¶ 6).  Petitioner Prodigy is a fintech platform that enables financing for international postgraduate students who attend a participating business school or postgraduate program.  (Id. ¶ 10; du Plessis Decl. ¶ 5).  A limited liability company, Prodigy exists under the laws of the United Kingdom and is located at Palladium House, 1-4 Argyll Street, London.  (Pet'n ¶ 3; du Plessis Decl. ¶ 4).

According to the Petition, Prodigy originates the student loans, which are thereafter assigned to MCL, which actually funds the loans and is entitled to the interest generated therefrom.  (Pet'n ¶ 11; du Plessis Decl. ¶ 7).  As loan servicer for MCL, Prodigy pursues debtors for unpaid and defaulted loans and receives a management fee from MCL.  (Id.)  Prodigy is regulated by the United Kingdom's Financial Conduct Authority ("FCA"), which maintains the integrity of the United Kingdom's financial markets by regulating financial firms providing services to consumers.  (Pet'n ¶ 12; du Plessis Decl. ¶ 5).

---

[1] Citations to "Pet'n" refer to the Petition for Confirmation and Enforcement of Foreign Arbitration Award, filed on November 15, 2019, ECF No. 1.
[2] Citations to "du Plessis Decl." refer to the Declaration of David du Plessis, dated November 15, 2019, ECF No. 2.

1) The Loan Agreement

Respondent Disse Wayourou Zadi-Pauyo is an individual, who either resides at 154 Silver Lake Road, 1st Floor, Staten Island, N.Y. 10301, or at 22426 93rd Avenue, Apt. 1E, Queens Village, N.Y. 11428.[3] (Pet'n ¶ 6). On or about April 24, 2015, respondent entered into a Fixed-Sum Loan Agreement (the "Loan Agreement"), under which Prodigy agreed to lend respondent $27,275.00 to attend the EMBA program at the IE Business School, located in Madrid, Spain. (Pet'n ¶¶ 13, 14, 17, Ex. B; du Plessis Decl. ¶¶ 10, 11, Ex. D). On or about May 7, 2015, Prodigy assigned all of its legal rights under the Loan Agreement to MCL, with Prodigy to act as servicer and administrator of the Loan. (Pet'n ¶ 19). Of the total amount of $27,275.00, $27,000 was paid directly to IE Business School to finance respondent's tuition; the remaining $275 represents an administrative fee payable to Prodigy. (Pet'n ¶ 14; du Plessis Decl. ¶ 11). According to the Petition, the respondent does not dispute that MCL disbursed the Loan proceeds. (Pet'n ¶ 15).

The Loan was to be repaid in 120 monthly installments, the first of which was due the earlier of August 28, 2015 or the date six months after respondent completed the specified coursework or his participation in the program was terminated. (Id. ¶ 20, Ex. A). The Loan further provided for the payment of interest upon late payment at an interest rate of 9.18 % per annum and a 9.79% Annual Percentage Rate ("APR") which incorporated MCL's administrative fees. (Id. ¶¶ 21, 22, Ex. B). The Loan Agreement also contained a provision that repayment of

---

[3]Although the Petition mentions the Queens address, it does not appear that any of the documents filed in the instant lawsuit were attempted to be served at that address. Accordingly, it is respectfully recommended that if this Queens address is a potential location for reaching respondent, petitioner be required to serve all future documents relating to this matter at that location as well as the other locations identified as possible places where respondent may be living.

3

the full amount of the Loan could be demanded if respondent paid late or breached the terms of the Agreement. (Id. ¶ 23, Ex. B). Under the Loan Agreement, respondent was not only responsible for interest on any overdue amounts but could be charged "any reasonable costs, charge and expenses that we may incur or have to pay to a third party, including legal costs" arising out of a breach of the Agreement or its enforcement. (Id. ¶ 24, Ex. B).

During the period between October 8 and October 29, 2015, respondent emailed Prodigy, indicating that he was experiencing financial hardships that resulted in arrears under the Loan Agreement. (Pet'n ¶ 7; du Plessis Decl. ¶ 17). Prodigy granted respondent an extension of time to pay until November 28, 2015. (Pet'n ¶ 7). In an email dated February 8, 2016, respondent indicated that he was still looking for work but hoped to pay his arrears with a tax refund. (Id. ¶ 28; du Plessis Decl. ¶ 18, Ex. G). On May 24, 2016, respondent made one repayment of $4,000. (Pet'n ¶ 28; du Plessis Decl. ¶ 13). No other payments were made under the Loan Agreement. (Pet'n ¶ 18; du Plessis Decl. ¶ 15).

On or about September 14, 2016, Prodigy sent an email to respondent under the Consumer Credit Act 1974 (UK) ("CCA"), notifying respondent of two missed payments of August 7, 2016 and September 7, 2016. (Pet'n ¶ 30; du Plessis Decl. ¶ 19, Ex. H). On November 16, 2016, respondent acknowledged his obligation to repay the Loan and explained his efforts to find a job, indicating that he hoped to repay all arrears before February 28, 2017. (Pet'n ¶ 31; du Plessis Decl. ¶¶ 20, 21, Ex. I). Prodigy thereafter agreed in an email dated December 8, 2016 to grant respondent a "zero repayment arrangement" for payments due from December 8, 2016 to March 7, 2017. (Pet'n ¶ 32; du Plessis Decl. ¶ 22, Ex. I).

Additional notices were sent to respondent as required by the CCA and on December 19, 2017, paper copies were served at respondent's home at 154 Silver Lake Rd, 1st Floor, Staten

Island, N.Y. 10301.  (Pet'n ¶¶ 33-35; du Plessis Decl. ¶¶ 23-25, Exs. J, K).  The December Notice, issued pursuant to CCA Section 87(1), stated that respondent owed $5,086.08 which was due to be repaid by November 28, 2017 and that the amount remained outstanding despite numerous requests for repayment.  (Pet'n ¶ 35, Ex. K).  The Notice further stated that if respondent paid the amount by January 10, 2018, the breach was capable of remedy.  (Id.)

On February 16, 2018, Prodigy sent respondent a letter demanding repayment in full under the Loan Agreement, pursuant to Clause 5.2 of the Agreement.  (Id. ¶ 36; du Plessis Decl. ¶ 26, Ex. L).  On March 5, 2018, Prodigy emailed respondent terminating the Loan and informing him of the consequences.  (Pet'n ¶ 37; du Plessis ¶ 27, Ex. M).  On April 6, 2018, MCL issued a Power of Attorney, appointing Prodigy to take any steps Prodigy considered desirable, including legal proceedings, to deal with the management of the Loan.  (Pet'n ¶ 38, Ex. D; du Plessis Decl. ¶ 9, Ex. C).  On May 14, 2018, Prodigy emailed respondent with a transaction history, showing that the balance owed on the Loan as of May 7, 2018 was $30,255.00.  (Pet'n ¶ 39; du Plessis Decl. ¶ 28, Ex. N).

2) The LCIA Arbitration

Pursuant to Clause 9.6 of the Loan Agreement, MCL commenced an arbitration against respondent before the LCIA on July 4, 2018.  (Pet'n ¶ 40; du Plessis Decl. ¶¶ 8, 29, Ex. B).  In addition to providing that any dispute arising out of the Loan Agreement would be subject to arbitration before the LCIA, the Agreement provided that any dispute would be governed by English law, and that any dispute not finally resolved by arbitration would be subject to the non-exclusive jurisdiction of the courts of England and Wales.  (Pet'n ¶ 41).

On August 31, 2018, the LCIA Court appointed Garreth Wong as sole arbitrator (the

"Arbitrator"), who proceeded to hold the arbitration in London, pursuant to the LCIA Rules and applicable English law. (Id. ¶¶ 42, 43). The Arbitrator contacted respondent on numerous occasions using two different email addresses, urging respondent to participate in the Arbitration, but respondent never appeared or responded to the Arbitrator. (Id. ¶ 44). Despite numerous emails urging respondent to submit responses to the Arbitrator's request for a Statement of Defense or the Arbitrator's written questions, respondent failed to communicate with the Arbitrator, and the Arbitrator then issued his Final Award on February 7, 2019. (Id.)

In the Final Award, the Arbitrator determined that respondent had breached the Loan Agreement; that Prodigy had corresponded with respondent on several occasions seeking timely repayment; that respondent had not denied or objected to the full transaction history; and that Prodigy was demanding full repayment of the Loan, along with applicable interest. (Id. ¶¶ 45-50). In ruling in favor of MCL's calculation of the amounts owed, the Arbitrator found that respondent owed $32,010.32 as of July 4, 2018. (Id. ¶ 51). This amount was composed of: 1) $30,754.72, including the original Loan amount of $27,000, plus the $275 in administrative fees paid to Prodigy, minus the repayment of $4,000, plus interest of $3,479.72; and 2) an additional $1,255.60 in simple interest accruing from February 9, 2018 to July 4, 2018, at the interest rate as of February 8, 2018, which was 10.208% or a daily rate of $8.60. (Id. ¶ 51). In addition, the Arbitrator calculated an additional $1,883.40 in simple interest from July 4, 2018 through February 7, 2019, the date of the Final Award. (Id.) The Arbitrator also awarded MCL legal costs and fees in the amount of 5,234.60 pounds and LICA costs and fees in the total amount of 8,136.49 pounds. (Id. ¶¶ 53, 54).

The Arbitrator gave respondent 14 days to pay MCL the award. (Id. ¶ 51). According to the Petition filed on November 15, 2019, respondent has not paid MCL or Prodigy any portion of

the amount due under the Final Award.  (Id. ¶ 56).

### 3) The Petition

On November 15, 2019, Prodigy filed the instant Petition seeking confirmation and enforcement of the Final Award pursuant to 9 U.S.C. § 201 et seq.  On March 6, 2020, this Court authorized substituted service on respondent.  Petitioner thereafter served respondent on April 2, 2020 by FEDEX to respondent's last known New York address – 154 Silver Lake Rd., 1st Floor, Staten Island, N.Y. – his last known California address – 5536 Lindley Ave., Apt 309, Encino, California – and his last known email address wayu777@gmail.com.  (Salva Decl.[4] ¶ 8, Exs. 2-5).  The documents served included: 1) a copy of the Docket sheet in this case; 2) the Summons, Civil Cover Sheet, and Petition with Exhibits A through E; and 3) the supporting Declaration of David du Plessis, in-house legal counsel for Prodigy, with Exhibits A through O.  (Id.)  When respondent failed to appear or respond to the Petition, the Clerk of Court entered a Certificate of Default on June 16, 2020.

On August 18, 2020, Prodigy notified its counsel that respondent had contacted Prodigy, acknowledging the debt and seeking a repayment plan for the Loan.  (Id. ¶ 24).  Respondent provided an updated email address: dwzp7777@gmail.com, and an updated telephone number: (818) 406-1570.  (Id.)  On that same date, Prodigy's counsel emailed respondent copies of the documents previously served on respondent, along with the Certificate of Default entered on June 16, 2020.  (Id. ¶¶ 25-27, Ex. 10).  Although respondent acknowledged receipt of the documents, the parties had been unable to settle the debt as of the date the current motion for

---

[4] Citations to "Salva Decl." refer to the Declaration of Jorge R. Salva, Esq., dated September 1, 2020, ECF No. 15-3.

7

default judgment was filed on September 1, 2020.

## DISCUSSION

I. <u>Default Judgment</u>

A. <u>Legal Standard</u>

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. See <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See <u>id.</u>; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b). The Clerk of the Court entered a default against defendant on June 16, 2020. To date, defendant has not moved to vacate the default judgment.

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. See <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored"

8

and doubts should be resolved in favor of the defaulting party. Id. Accordingly, the plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). The more money involved, the less justification for entering the default judgment. Id. Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

B. The Convention

In this case, the petition is brought pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517; 330 U.N.T.S. 38

9

(Dec. 29, 1970). The Convention "governs the enforcement of arbitral awards stemming from disputes that are 'commercial and . . . not entirely between citizens of the United States.'" PDV Sweeny, Inc. v. ConocoPhillips Co., No. 14 CV 5183, 2015 WL 5144023, at *4 (S.D.N.Y. Sept. 1, 2015), amended, 2015 WL 9413880 (S.D.N.Y. Dec. 21, 2015) (quoting Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 391 (2d Cir. 2011)). The Convention was designed to "'promote the enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions.'" Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 92 (2d Cir. 1999) (quoting David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 250 (2d Cir. 1991)). The Convention is implemented domestically by the Federal Arbitration Act ("FAA"). PDV Sweeny, Inc. v. ConocoPhillips Co., 2015 WL 5144023, at *4; see Goel v. Ramachandran, 823 F. Supp. 2d 206, 210 (S.D.N.Y. 2011) (stating: "Congress implemented the . . . Convention by enacting Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208"); see also Emirates Int'l Inv. Co., LLC v. ECP Mena Growth Fund, LLC, No. 11 CIV 9227, 2012 WL 2198436, at *5 (S.D.N.Y. June 15, 2012) (holding that "Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 et seq., . . . makes the Convention on the Recognition and Enforcement of Foreign Arbitral Awards . . . enforceable in federal courts").

Under the FAA, the federal courts are granted original jurisdiction pursuant to 9 U.S.C. § 203. Section 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." Goel v. Ramachandran, 823 F. Supp. 2d at 211; see Gerling Glob. Reinsurance Corp. v. Sompo Japan Ins. Co., 348 F. Supp. 2d 102, 104 (S.D.N.Y. 2004). In Unicom Bulk

10

Traders Ltd. v. Fortune Mar. Enterprises, Inc., the court explained that "jurisdiction under the Convention . . . exists . . . where a party seeks to compel arbitration, enforce an arbitral award, or obtain preliminary relief in aid of arbitration."  No. 08 CV 9710, 2009 WL 125751, at *3 (S.D.N.Y. Jan. 20, 2009) (citing Int'l Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388, 391 n. 5 (2d Cir. 1989); Borden, Inc. v. Meiji Milk Prods. Co., Ltd., 919 F.2d 822, 826 (2d Cir. 1990)).  Pursuant to the FAA, any party may apply for confirmation of an arbitral award to a court having jurisdiction within three years of the award.  9 U.S.C. § 207.  See Oltchim, S.a. v. Velco Chemicals, Inc., 348 F. Supp. 2d 97, 99-100 (S.D.N.Y. 2004).

A court's review of a foreign arbitral award is a summary proceeding and strictly limited in scope under the Convention.  See Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc., 126 F.3d 15, 19 (2d Cir. 1997); see also Zeiler v. Deitsch, 500 F.3d 157, 169 (2d Cir. 2007).  As the court in OOO FC Grand Capital v. International Pharm. Servs. Ltd. noted: "'A district court's review of an arbitration award is extremely deferential' and 'such deference is particularly appropriate with respect to foreign arbitration awards.'"  No. 16 CV 6156, 2017 WL 8813135, at *5 (E.D.N.Y. Dec. 15, 2017) (quoting Korean Trade Ins. Corp. v. Eat It Corp., No. 14 CV 3456, 2015 WL 1247053, at *4 (E.D.N.Y. Mar. 16, 2015)).

A party seeking enforcement of a foreign arbitration award is required to provide a duly authenticated original award or authentic copy of the award, and an original or certified copy of the agreement to arbitrate.  9 U.S.C. § 201; New York Convention, Article IV, section 1.  Once those documents are provided, the party resisting confirmation bears a heavy burden if it seeks to set aside the arbitration award.  Indeed, Article V of the New York Convention sets out the specific grounds on which a court may refuse to enforce an award.  New York Convention, Article V; see Yusuf Ahmed Alghanim & Sons,W.L.L., 126 F.3d at 19.  Enforcement may be

11

refused if the party resisting confirmation demonstrates:  1) the parties to the arbitration agreement were under some incapacity or the agreement is not valid under the law to which the parties have subjected the agreement or where the award was made;  2) the party resisting the award was not given proper notice or was otherwise unable to present his case;  3) the award deals with a matter not contemplated by the agreement to arbitrate;  4) the arbitral authority or the procedure was not in accordance with the parties' agreement or the law of the country where the arbitration occurred;  or 5) the award has not yet become binding or has been set aside by a competent authority of the country where the award was made.  Id.  Moreover, in instances where the award deals with a difference not contemplated by the agreement to arbitrate, enforcement may be denied "if the subject matter of the difference is not capable of settlement by arbitration," or if recognition of the award would "be contrary to the public policy" of the country where enforcement is sought.  Id.  The burden of demonstrating that one of the circumstances set forth in the Convention warrants denial of enforcement rests with the party seeking to resist enforcement, see Mercury Venture Int'l Ltd. v. DGM Commodities Corp., No. 13 CV 1521, 2015 WL 893652, at *7 (E.D.N.Y. Mar. 2, 2015), and that party must provide competent evidence in support of its argument that recognition or enforcement should be denied.  See Europcar Italia S.p.A. v. Maiellano Tours, Inc., 156 F.3d 310, 313 (2d Cir. 1998).  Where the petition is unopposed, the court is not required to inquire whether any of the exceptions to enforcement applies.  PKT Assocs. v. Granum Grp., LLC, No. 18 CV 1169, 2018 WL 3392879, at , at *1 (S.D.N.Y. July 12, 2018).

     In the instant case, Prodigy has provided the Court with the Notarized and Apostilled Declaration of David du Plessis, in-house counsel for Prodigy, certifying the authenticity of the Final Award issued by the Arbitrator, and the Loan Agreement that contains the agreement

12

between the parties to submit any dispute to arbitration. (du Plessis Decl., Ex. A). Submission of these documents is sufficient to satisfy Prodigy's initial burden under the Convention. The burden then shifts to the respondent to come forward and demonstrate that one of the exceptions set forth in the New York Convention applies if respondent seeks to have the Court deny enforcement. Here, respondent was provided with ample notice of the arbitration, given numerous opportunities to appear and present evidence to the Arbitrator, and was served with process in connection with this Petition to enforce the award. On numerous occasions, respondent was invited to submit a defense in the Arbitration, to provide discovery, respond to procedural issues, and even make a counterclaim. He chose not to appear or respond to the Arbitrator, despite numerous emails sent to the email address from which respondent had been communicating with Prodigy and with the LCIA prior to the arbitration. The Arbitrator found that Prodigy had lent respondent $27,275.00, pursuant to a duly executed Loan Agreement, executed on November 25, 2014, and that, despite numerous notices sent both electronically and by mail informing respondent of his payment obligations under the Loan, respondent defaulted in the amount of $30,255.10. (du Plessis Decl. ¶¶ 10-12, 17-28, Exs. D, F-N). The Arbitrator further observed that respondent had failed to participate in the Arbitration proceedings and yet gave him 14 days to pay the Final Award which amounted to $33,893.72 including interest, along with £13,371.09 pounds in attorney's fees and costs.

      Respondent further chose to default and not respond to the instant Petition to enforce and confirm the Award filed in this Court. Based upon a review of the allegations in the Petition and the supporting documentation, which are undisputed at this time, the Court finds that Prodigy has sufficiently established liability to warrant entry of a default judgment confirming the Final

13

Award.  Despite proper service, respondent failed to answer or otherwise respond to the Petition and he has not appeared in this action.

Given that petitioner's evidence in support of the Final Award is undisputed and respondent has not come forward with any evidence demonstrating that any of the seven circumstances listed in the New York Convention would apply to warrant denial of the Petition, the Court respectfully recommends that default judgment enter and that the Petition to confirm and enforce the February 8, 2019 Final Arbitration Award be granted.  It is further respectfully recommended that respondent Disse Wayorou Zadi-Pauyo be ordered to pay petitioner $33,893.72 as owed under the Loan Agreement, and £13,371.09 pounds[5] in attorney's fees and costs.

## CONCLUSION

Accordingly, the Court respectfully recommends granting the Petition to enforce the Arbitration Award and granting default judgment in the amount of $52,519.65.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

---

[5] This amount, as converted to U.S. Dollars based on the listed exchange rate on www.bloomberg.com, is $18,625.93.  £13,371.09 x 1.3930 (rate as of August 5, 2021) = $18,625.93.  With the $33,893.72 owed under the Loan, respondent owes a total of $52,519.65.

14

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 5, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York